IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NICHOLAS D. LEE, § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 4:17-CV-03103 |
| NANCY BERRYHILL, § | |
| Acting Commissioner of § | |
| Social Security Administration, § | |
| *Defendant.* § | |

## ORDER

Plaintiff Nicholas D. Lee sought review, as permitted by the Social Security Act, of the Commissioner's final decision denying his applications for social security disability insurance benefits and supplemental security income payments. Dkt. 1. The parties consented to proceed before a magistrate judge and this matter was transferred to this Court. Dkt. 6. Lee and the Commissioner have both moved for summary judgment. Dkt. Nos. 8 and 9. Lee also filed a reply to the Commissioner's motion. Dkt. 10. After reviewing the motions, the record and the law, Lee's motion is granted, and the Commissioner's motion is denied.

## Background

Lee filed his claims on August 1, 2014, alleging he became disabled on December 2, 2012.[1] His claims were denied on initial review and appeal, so he requested a hearing before an administrative law judge. That hearing took place on November 20, 2015. Dkt. 3-3 at pp. 72-85. Lee failed to appear and the Administrative Law Judge (ALJ) heard

---

[1] The record shows that Lee had previously filed for social security disability benefits claiming an onset date of October 15, 2009. That claim was denied after hearing. See Dkt. 3-3 at pp. 86-120. Lee appealed the denial to the district court which remanded it for a rehearing. *Id.* at 88. Although the outcome of the rehearing is unknown, Lee filed a new application in 2014, suggesting it was again denied. *Id.*

testimony from a vocational expert and argument from Lee's attorney. A second hearing was held on April 11, 2016 and Lee appeared and testified. Dkt. 3-3 at pp. 36-71. A second vocational expert testified as well. No medical testimony was presented at either hearing.

Following the hearings, the ALJ denied the claims by written decision on May 26, 2016, after completing the required five-step[2] sequential analysis. Although the ALJ determined at step two that Lee had severe impairments of "status post left knee meniscus repair, degenerative joint disease and osteoarthritis of the bilateral knees, lumbar degenerative disc disease, cervical degenerative joint disease, right shoulder degenerative joint disease, obesity, hypertension, asthma, and major depressive disorder with psychosis," he concluded at step three that those impairments, individually and together,

---

[2] "The sequential evaluation process is a series of five 'steps' that we follow in a set order. . . .These are the five steps we follow:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§404.1520, 416.920.

did not meet or medically equal any of the Agency's listed impairments. Dkt. 3-3 at 23-25. The ALJ decided that Lee had the residual functional capacity to perform light work,[3] although with some restrictions. He could only occasionally climb ramps or stairs, and could never climb ladders, ropes, or scaffolds. Lee could stand or walk only four hours and sit for four hours in an eight hour work day. He could only occasionally balance, stoop, crouch, crawl and kneel. The ALJ also determined that Lee could perform frequent overhead reaching with both arms, but should avoid frequent exposure to fumes, gases, odors, poor ventilation, heat, cold and temperature extremes. Lee could understand, remember, and carry out detailed, but not complex, instructions. He could make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions, and respond appropriately to routine changes in the work setting. *Id.* at 26. The ALJ conceded that Lee was unable to perform any of his past relevant work as a shipping/receiving clerk, laborer, or loader, because those positions exceeded his residual functional capacity. However, he concluded that Lee could work as an assembler, electronics worker, or packager, and so he was not disabled under the Act. Dkt. 3-3 at 32.

Lee sought review of the ALJ's decision from the Appeals Council. Dkt. 3-6 at 38-48. The Appeals Council denied his request, finding no reason to review the ALJ's decision. Dkt. 3-3 at 2-4. Lee then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## Standard of Review

---

[3] Light work is defined as "lifting and/or carrying up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently; standing and walking up to 6 hours in an 8-hour workday; sitting up to 6 hours in an 8-hour workday; and pushing and pulling the same weight as lifting and carrying." See CFR 416.967(b).

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylo v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The Commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show that he is unable to perform the alternative work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Post hoc rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery*, 332 U.S. 194, 196 (1947).

## Analysis

Lee, in five points of error, contends that the ALJ erred when he: 1) concluded that Lee did not meet or equal Listing 1.02 for a major dysfunction of a weight bearing joint; 2) failed to obtain an updated medical opinion from a medical expert on the medical equivalency of Lee's combined physical and mental impairments or obtain a medical opinion on his RFC; 3) reached an RFC finding that is inconsistent with the ALJ's findings of severe mental impairments causing moderate limitations; 4) made a strict, mechanical application of the medical-vocational guidelines; and 5) failed to determine if Lee could maintain employment. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. Because a decision on Lee's first and second points dispose of this matter, the court will focus its discussion on those arguments.

### *Listing 1.02 and the Absence of a Medical Opinion Supporting the RFC Finding*

Lee argues that the ALJ erred when he determined that Lee did not meet or equal Listing 1.02 for a major dysfunction of a weight bearing joint. He insists there is ample medical evidence showing that he meets the listing criteria but the ALJ rejected that evidence without explanation. Lee further complains that the ALJ should have consulted with a medical expert regarding the RFC finding in light of his combined physical and mental impairments. The Commissioner argues that it was Lee's burden to prove he met the listing requirements and he failed to do so.

A claimant may satisfy his burden of proving disability if he shows that his impairment or impairments meet or equal a listing. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

An ALJ has a duty to analyze a claimant's impairments under every applicable listing. The failure to consider a specific listing is harmless only if the record shows such a listing is not met. *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007).

Listing 1.02A, which covers musculoskeletal disorders, requires a claimant to exhibit a major dysfunction of a joint characterized by (1) gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability); (2) chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint; (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint; (4) with involvement of one major peripheral weight-bearing joint (i.e., hip or ankle), resulting in an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02A. "An inability to ambulate effectively" is an "extreme limitation of the ability to walk," and includes the use of crutches or a walker. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. *Id*.

Lee has presented evidence that appears to support his contention that he satisfies the criteria of Listing 1.02. It is indisputable that Lee has a significant history of moderate to severe osteoarthritis in both knees, with mild to moderate degenerative joint disease and moderate changes. He has undergone two meniscal repair surgeries on his left knee. He has been described as having "severe bony overgrowth and deformity with fused patella" in the left knee. Dkt. 3-13 at 80. The medical records show that at various times,

Lee has worn knee braces and used crutches to walk.[4] He must use narcotic medication to control his knee pain. He has undergone cortisone and steroid injections in both knees, but they were both unsuccessful, and caused serious side effects.[5] Lee's knee pain was significant enough that he was evaluated for knee replacement surgery.[6] He has a history of falls because of instability in his knees.[7] Both knees are restricted in their range of motion.[8] From this, it appears, at least on the face of the records, that Lee may satisfy the criteria for Listing 1.02. Despite this, the ALJ gave no explanation why Plaintiff's osteoarthritic knees did not meet that criteria. He discussed at length the reasons Lee's mental disorders did not meet Listing 12.04, but failed to even mention Lee's knees or Listing 1.02 during step three of his analysis.[9]

In *Audler*, the ALJ summarily concluded that the claimant's impairments did not meet or equal any of the impairments in the Listings, but did not identify which Listing the claimant failed to meet and did not explain how she reached that conclusion. *Audler*, 501 F.3d at 448. The appellate court held that "[s]uch a bare conclusion is beyond

---

[4] Lee was noted to be using crutches on October 17, 2011 (Dkt. 3-13 at 40), November 23, 2011 (Dkt. 3-13 at 18), January 12, 2012 (Dkt. 3-13 at 9), July 12, 2012 (Dkt. 3-12 at 76), October 11, 2012 (Dkt. 3-12 at 54), July 10, 2013 (Dkt. 3-12 at 30) and August 27, 2014 (Dkt. 3-9 at 3).

[5] Dkt. 3-13 at 45 (hyaluran injections had minimal effect), Dkt. 3-13 at 70 (right knee steroid injection).

[6] It is unclear from the records if he was denied replacement surgery because he was too young, or because his osteoarthritis was not severe enough, or if it was a combination of both factors.

[7] Lee reported his left knee had no stability after surgery and "gives out while walking" more often than his right knee does on May 5, 2011 and August 23, 2011. Dkt.3-13 at 79, 45. He reported falls during his doctor's visits on August 23, 2011 (*Id.*), July 12, 2012 (*Id.* at 9), March 5, 2012 (Dkt. 3-12 at 109), October 11, 2012 (Dkt. 3-12 at 52); and June 13, 2013 (Dkt. 3-11 at 86).

[8] Dkt. 3-13 at 80, Dkt. 3-9 at 6.

[9] The commissioner contends that Lee failed to show he met the Listing criteria because he has never been diagnosed with "subluxation, contracture, bony or fibrous ankyloses or instability." Dkt. 9 at 5. This contention ignores Lee's history of falls, as well as a May 18, 2011 left knee MRI for "left knee instability," none of which were discussed by the ALJ.

meaningful judicial review." *Id*. (quotation omitted). The court noted that while the ALJ was not always required to do an exhaustive point-by-point discussion of each possible listing, the ALJ had offered nothing to support her conclusion that the claimant failed to meet a listing and so the reviewing court could not tell whether the decision was supported by substantial evidence. *Id*. That error was not harmless because the claimant appeared to meet one of the listings. *Id*. at 449. As in *Audler*, the ALJ here gave no explanation for rejecting Listing 1.02. There is evidence Lee may meet that Listing. On this record, the ALJ's summary conclusion that he "finds no evidence to show the existence of any impairment that meets the criteria of any of the listed impairments," devoid of any explanation for how he reached that conclusion with respect to Listing 1.02, is not supported.

The ALJ's brief discussion of Lee's history of knee problems in the residual functional capacity assessment offers no support for his decision. In rejecting Lee's knee impairment as a debilitating condition, the ALJ gave little explanation. Although this Court is not here to "reweigh" the evidence, it is here to make sure the ALJ's decision is not arbitrary or capricious, but instead is supported by substantial evidence. A review of the ALJ's cursory discussion on this topic shows it is not.

After noting Lee's history of knee complaints, the ALJ pointed to "office visits from May 2013 through August 2013 [at which] the claimant reported that he was doing well in regards to his bilateral knees and was no longer using crutches."[10] Dkt. 3-3 at 27.

---

[10] The ALJ's decision gives no clear indication whether he believes Lee requires crutches to walk more than a few steps. The RFC finding, however, allowing four hours of walking (and attendant carrying) suggests the ALJ did not believe crutches were necessary.

It appears the ALJ concluded from these records that Lee no longer needed crutches. However, this statement by the ALJ does not accurately summarize the records. On May 13, 2013, Lee was treated for chronic pain. Lee reported no recent falls, and the doctor noted that he was not using crutches at the appointment. Dkt. 3-11 at 97. He was referred for physical therapy for moderate to severe osteoarthritis in both knees. Lee was seen again on June 13, 2013. Dkt. 3-11 at 86. Although Lee did not bring crutches to the appointment, he had fallen again that morning. *Id.* Lee returned to the doctor on July 16, 2013 because he had run out of pain medication. *Id.* at 79. He was wearing braces on both knees, and the records make no reference to the use of crutches. *Id.* at 80. On August 23, 2013, Lee was seen again for treatment of chronic pain. *Id.* at 74. He reported that the swelling in his knees was better with aquatic therapy. Again, there was no statement about the use of crutches. The ALJ's use of these records to contend that Lee is "no longer using crutches" is not wholly supported in light of other evidence discussed in this opinion.[11]

The ALJ then considered the opinions of Lee's treating physicians and the consulting experts. He afforded "great weight" to the opinion of Dr. Yvonne Post, a non-examining state agency medical consultant and adopted most of the limitations Dr. Post placed upon Lee. At the same time, he gave little weight to the opinion of Dr. Amin

---

[11] Lee told his treating doctor on January 10, 2013 that he needed crutches when walking long distances. Dkt. 3-12 at 30.

Karim, a state agency medical consultant who did examine Lee, and also gave little weight to the opinions of Lee's treating physicians.[12] Dkt. 3-3, pp. 26-29.

It is within the purview of the ALJ to consider and weigh the medical opinions in a case, and his decision will not be disturbed if it is supported by substantial evidence. In this case, though, the ALJ's decision to give great weight to the opinion of Dr. Post and little weight to the opinion of Dr. Karim is unsupported. An examination of the opinions, and the bases for those opinions, reveals why.

Dr. Post's opinion is set out in the Disability Determination Explanation denying Lee's initial application. Dr. Post completed her assessment on September 29, 2014. Dr. Post did not examine Lee and did not review any records of his prior treatment. In preparing her assessment, Dr. Post appears to have relied only on the report completed by Dr. Karim (discussed below), a report completed by an examining psychologist,[13] and the notes from the disability adjudicator from his in-person meeting with Lee.[14] With respect to his knee complaints, Dr. Post reviewed only a single x-ray of the right knee and Dr. Karim's examination.[15] Dkt. 3-4, p. 127. From these materials, Dr. Post concluded that Lee had several "postural limitations" and he could only occasionally climb ladders and scaffolds, stoop and kneel, and could frequently crouch (bend at the knees) and crawl.

---

[12] Two of Lee's treating physicians opined that he was unable to work because of his knee osteoarthritis. Dkt. 3-14 at 12-13.

[13] The psychologist noted that Lee did not appear to have any physical limitations during the psychological examination. Dkt. 3-4 at 6.

[14] The disability adjudicator noted that Lee moved from side to side while sitting, but otherwise had no limitations. Dkt. 3-4 at 6.

[15] Dr. Karim ordered x-rays of the chest, right knee, and lumbar spine. Dr. Post reviewed these x-rays. Dkt. 3-9 at 2.

The source of these limitations, according to Dr. Post, was Lee's "low back pain with mild degenerative disc disease." Even though Dr. Post pointed out that Lee was on crutches when he was examined by Dr. Karim, she placed no limitations on him because of his knee osteoarthritis and did not even mention his left knee as a source of pain. Instead, she highlighted that his gait was slow (but otherwise normal) during Dr. Karim's examination. In her report, it is not apparent that Dr. Post even acknowledged that Lee suffers from osteoarthritis and degenerative joint disease in his left knee.

In the absence of any medical records to review, Dr. Post relied exclusively on Dr. Karim's examination in formulating her opinions. Dr. Karim examined Lee on August 27, 2014, one month before Dr. Post's report. Dr. Karim included Plaintiff's description of an eight year history of knee pain that included two surgeries on his left knee. Although Lee had no visible swelling or redness in his knees at the time of the examination, Dr. Karim saw decreased flexion in his right knee at 70 degrees and decreased flexion in his left knee at 30 degrees. Dr. Karim examined his gait and recorded: "Gait tested in office is slow and unassisted; Patient refuses to walk on tip toe, on heels; not able to do tandem walking; cannot hop or squat." He said that Lee had difficulty moving about, but otherwise had normal strength and no motor dysfunction in his extremities. Lee could "ambulate effectively with [the] assistance of crutches."[16] Dr. Karim ended his report with this statement: "NEEDS FURTHER EVALUATION OF THIS KNEE AND CERVICAL PROBLEMS AND NEEDS PHYSICAL THERAPY." (emphasis in original). In sum, Dr. Karim saw evidence that Lee was impaired because of the condition of his knees, needed

---

[16] Of note, Dr. Karim's examination was done a full year after the records discussed above that the ALJ relied on as evidence that Lee no longer used crutches.

11

crutches to walk, could not squat, and needed further evaluation to determine the extent of his knee impairment.

The ALJ gave little weight to Dr. Karim's opinion because it was "vague and unsupported by the medical evidence." The ALJ offered no other explanation, and pointed to no records contradicting Dr. Karim's findings. Dr. Karim's opinions are clearly based on his physical examination of Lee, and the results of that examination are generally consistent with Lee's history of knee pain, instability, falls, use of crutches, and overall medical treatment in general. Although there might be a legitimate reason to discount Dr. Karim's report and opinions, the ALJ made no attempt to explain how it was inconsistent with the objective medical evidence, merely dismissing it as vague and unsupported. The ALJ then gave great weight to the opinions of Dr. Post, even though she had only Dr. Karim's report to review, and even though she gave no explanation for her disagreement with Dr. Karim's physical assessment. Dr. Karim believed there should be a further evaluation of the condition of Lee's knees. Rather than follow that recommendation, Dr. Post ignored all of the evidence that Lee had any knee impairment and difficulty walking. Further, Dr. Post's conclusion that Lee can "frequently crouch," and the ALJ's finding that he can occasionally crouch, is directly contradicted by Dr. Karim's statement that Lee is unable to squat. Neither Dr. Post nor the ALJ even attempted to explain why Dr. Karim's findings on this or any other issue might be untrustworthy, or explain why Dr. Post's opinions were more consistent with the medical evidence. One possible explanation for this, of course, is that Dr. Post could not find support for her opinion in the medical records because she did not review any records and

had no idea what prior treatment Lee had received. The ALJ then further muddied the waters by placing even greater restrictions on Lee than Dr. Post suggested, but offering no explanation for the increase.[17]

Dr. Post's opinion is not supported by substantial evidence; instead it is contradicted by what little evidence it is based on. The ALJ's determination of Lee's residual functional capacity, reliant as it is upon Dr. Post's opinion and contradicted by Dr. Karim's report, is likewise unsupported by substantial evidence. The ALJ's cursory explanation for giving little weight to the opinion of Dr. Karim is unconvincing, and that decision is not supported by substantial evidence. Making matters worse, the ALJ disregarded Dr. Karim's recommendation for an additional evaluation of plaintiff's knee condition. The ALJ's cursory dismissal of Lee's knee problems gives no explanation how Dr. Karim's opinions are inconsistent with the medical records, nor does the ALJ explain why further evaluation is unnecessary. Because of this, the ALJ erred when he did not consider and explain whether Lee met the criteria of Listing 1.02. On remand, it may be necessary for the ALJ to request additional assessments of Lee or obtain medical testimony on the combined effects of all of Lee's medical complaints in order to appropriately consider whether Lee meets or equals the Listing criteria, and also to support the ALJ's residual functional capacity assessment.

**Conclusion and Order**

---

[17] Dr. Post said that Plaintiff could balance without limitation, frequently crouch and crawl, and occasionally stoop and knee. The ALJ decided he could only do those activities occasionally.

For these reasons, Lee's motion for summary judgment is granted and this case is remanded for further administrative proceedings in accordance with this order.

Signed at Houston, Texas on July 30, 2018.

Stephen Wm Smith
United States Magistrate Judge